First question is, can you hear me? Yes, I can, Your Honor. All right. Good morning, well, good afternoon to all of you in California. All right. Let me just say that we are familiar with the record in this case, which is an interesting one. We've read all the briefs. I'm going to urge you to listen to our questions and answer them. We're going to have some. This is an interesting case with the intersection between Admiralty and bankruptcy law, and you do yourself a disservice if you don't respond to the questions we ask. My first question for you is, would you like to reserve some time for rebuttal? Yes, I would, Your Honor. Thank you. And how much? I'd like to reserve at least half of my time for rebuttal. So let's do seven minutes, 30 seconds. All right. And we won't necessarily give you a warning, but I'll try to sometime around seven minutes in let you know you're getting close if you're not in the middle of a response at that time. So you may begin. Thank you, Your Honors. And in this case, I represent H3O Communications LLC, which is the creditor in this case. And in this case, my client had provided fishing supplies to the Deborah Ann fishing vessel. And as a result of that was a secured creditor. And what's troubling to me as counsel is that my client provide these fishing supplies, and under Admiralty law, my client was supposed to have priority in being able to recover some of those monies that he advanced to the Deborah Ann, the fishing vessel. Well, doesn't he still have those rights? I mean, well. Go ahead. Theoretically, he has those rights. But to me, they're meaningless because his status has been changed from secured to unsecured creditor. Does he not still have a lien on the vessel and all appurtenances? Well, he has a lien on the vessel and the appurtenances, but the vessel has become in such a disheveled shape that it's not really operational at this time to be used. It hasn't set sail, as far as I know, for quite a while, and it would cost an enormous amount of money to actually get it seaworthy and fishing ready to get it back out on the open market in order to catch fish and sell it. But, counsel, isn't that a risk that every creditor who claims a lien has on the collateral? Well, it's always a risk, but it needs to be put in the context of what the law is meant to protect. And my client was the last creditor who supplied the supplies to the Deborah Ann. And VAC, V-A-C Industries, they did not supply the last set of supplies to the Deborah Ann or to that sea captain that was trying to save his vessel. You know, the thing is, is fishing permits are very valuable. And on the open market, they net a lot of income. And VAC Industries had a choice. They could have continued to supply fishing supplies to the Deborah Ann and the captain of that vessel and kept it fully operational and run it and not let it fall into a state of disarray where it's not seaworthy and operational to catch fish. However, VAC Industries, it reminds me of those coal mining towns when there would be a supply store and they'd give supplies to the people who worked for them, the company store, and they'd keep running up the debt so much that the person would never be able to pay it off and be able to get their freedom from that debt. And that's exactly what happened in this case with VAC Industries. But, counsel, I understand a couple of things. And I guess I'm missing the point of the argument, because it was pre-petition that VAC took the permit, correct? Pre-bankruptcy VAC obtained rights, a transfer of the permit, correct? That's correct, pre-bankruptcy. And you retained the right to, you know, no matter the condition of the Deborah Ann, your client could arrest the vessel, institute a claim in Admiralty, sell it, and get the first dollars out is what you're arguing, correct? Well, the fishing vessel isn't really in a condition to do that, so that's why my client was trying to obtain the permit through a sale. If the permit is an appurtenance to the vessel, it wasn't in the hands of VAC, which it would have to be for you to have a lien on it or your client to have had a lien on it at the time of the bankruptcy, which is what's relevant here, don't you still have a lien on it? Well, we still have a lien on it, but my client wasn't able to secure the fishing permit because VAC Industries was allowed to keep it and the trustee abandoned the fraudulent transfer claim to take the fishing permit back and keep it with the fishing vessel, the Deborah Ann, and if the trustee had not abandoned the fishing permit, fraudulent transfer claim, and pursued that, then the permit could, which is very valuable, be matched with Deborah Ann, which... What's the duration of those permits? Are they one year, two years, in perpetuity? That's a Hawaii long line? Yeah, I don't know any time limit on the permit, and my understanding of the process is that the people who give out the permits only give out so many at a time, and that's why the permits are so valuable. So it would have been worth it for my client as a secured creditor to have that permit, and he actually engaged in the bidding process and tried to keep the permit with the vessel, the Deborah Ann, which is the whole point of keeping the permit with the vessel, so that way the person who supplies the goods can choose to use that valuable permit to have a good incentive to make sure that the vessel, money will be expended to make it fully operational, and put it back at sea, and then that captain, I mean, the whole point of the bankruptcy proceeding and the statutes and congressional intent is to kind of keep the debtor from being taken advantage of, and also the creditors from not really having a fair shot at getting what they're entitled to under the different provisions, and that's what happened here. By the trustee abandoning the fraudulent transfer claim, VAC Industries was allowed to hold onto that permit, put $75,000 into the trustee's account for the bankruptcy proceeding, and that's a sale. It reminds me of the expression arose by any other name. There's consideration, there's $75,000 that's transferred to the trustee for the trustee to let go of the fraudulent claim transfer, and VAC Industries gets to keep the permit. The permit's no longer with the debtor. A really minor point, but putting aside whether it was or wasn't a sale, a fraudulent transfer can be resolved by either getting the thing or the value of the thing, right? So the trustee was not obligated to get the thing back in any event, right? I don't agree with that, Your Honor, because the fission permit is a lot more valuable on the open market. That's not the question. The question is if there's a fraudulent transfer, the remedies are get the thing or the value of the thing. He's not obligated to get the thing, correct? Well, the trustee's obligated to act in the best interest of the debtor. Sure. And taking $75,000 is not in the best interest of the debtor in this case. But there would also be significant cost incurred in litigating the issue, correct? Well, there would have been zero if the judge did not force. There was a bidder who wanted to buy the permit, and if that had just been able to go through and basically the judge kind of interfered with the bidding process, there was an unsolicited Did you raise that as an issue on appeal? I don't remember that being anywhere in your briefing. Okay. Nor do I see it in the record. Yeah, it's in the record. Where? And you're kind of into your reserve time, so I'll warn you now. Why don't you look for that while you're in your reserve time? So rather than making you burn time while you look for something, you can look for that. The other question that I'm going to want you to answer when you get back up is, under what case law in Admiralty are you entitled to the proceeds of collateral when you have not commenced an NRIM proceeding? So that's a legal issue that I think needs to be explored. So you can think about those two things, and we'll allow the appellee to go forward. And we'll reserve the rest of your time. Thank you very much, Your Honors. Thank you. Thank you. Ms. Chau. You may proceed. May it please the Court, my name is Elaine Chau, and I am appearing on behalf of the trustee, Elizabeth A. Cain. This case is a garden variety settlement of an avoidance claim, and there's nothing more to it. There are three main points in this appeal. The first is that the HVO does not have a security interest in the settlement proceeds. Second, the settlement was not a sale. And third, there is no conflict with Judge Farris presiding over the case. So I will begin with the first point, which is that HVO does not have a security interest in the settlement proceeds. They do not have a security interest because they do not have a lien on the permit itself. The permit was not an appurtenance to the vessel because, as HVO's counsel has already stated, the vessel was not seaworthy as of the commencement of the case. Thus, the permit could not have served any value to the vessel itself. But the permit was assigned to the Deborah Ann. As I understand it, these permits are, while owned at that time facially by a non-owner of the Deborah Ann, the designated vessel was the Deborah Ann. Isn't that correct? The permit was assigned to Deborah Ann. That is correct. However, one day prior to the bankruptcy filing, VAK actually sent a letter of intent to withdraw and to reassign the permit. Thus, as of the commencement of the case, the permit was no longer assigned to the vessel at issue. The cases are clear for the principle that if the permit does not provide services or value to the vessel itself, the creditor, there is no maritime lien on the permit itself.  There are cases that have been cited in the briefing that stands for the proposition. Yeah, I'm asking a different question. Is the withdrawal or the notice that you just discussed, is that in the record? Oh, yes, it is. Okay. I will, let me. You can just say yes and we'll find it. When I ask that, it means I don't have it at my fingertips. But I'll trust you and I'll go back and find it. Go ahead. I noted it here. It's in the trustee's excerpt of record, page 48. So it's labeled TER-043. And what is the relevant law that says that sending of that notice is sufficient as of the time of the notice as opposed to the time of receipt or some other time to sever the Deborah Ann's rights to the permit? There is, I am not aware of case law that specifically states that, but it does indicate the intent of the owner of the permit to show that the permit would no longer be used for the vessel itself. And so there is a case also in the briefing, PNC Bank, which states that once the vessel sinks, the permit for that original vessel, the lien on the permit for the original vessel no longer carries on to the permit that is assigned to the new vessel. And the same principle applies here where once the vessel Deborah Ann went into mooring as of the commencement of the case, it is no longer seaworthy and thus essentially it sank. And because it sank, the permit cannot provide any services to that particular vessel, Deborah Ann. Is it necessary that we come to that conclusion to rule in your favor? It is necessary because it shows that the permit itself was not in a pertinence to the vessel and thus ATRIO does not have a maritime lien on that permit. However, the trustee has entered into a settlement agreement and incidentally the trustee had abandoned any rights she may have had in the permit itself. Thus, to the extent that ATRIO does have a maritime lien and the trustee does not agree with that, but to the extent ATRIO does have a maritime lien on the permit, it is still free to pursue it. That's really the question. The trustee did nothing to interfere directly with any lien rights that H3O would have had. Correct. Counsel, what would H3O have to do to maintain that lien? Or to recover on it. The trustee's position is that H3O does not have a lien, but to the extent it does have a lien, it can recover it. They are free to go after VAK, who is the current owner of the permit, to execute on their lien, but it's no longer within the trustee's ability to recover the permit. They can't go after VAK on a fraudulent conveyance theory, however. Sorry, can you repeat the question? They can no longer go after VAK on a fraudulent conveyance theory, however. Is that not correct? The trustee has settled the fraudulent transfer claims with VAK. So they would have to be pursuing rights as a secured creditor because the fraudulent conveyance rights would be unsecured creditor's rights. They would be litigating their respective rights as secured creditors. I am not certain that they are secured creditors, but whatever claims they do have against VAK, or whoever has an interest in the permit, they can pursue that. I'm not certain about what procedures they have to follow in order to pursue their claim against the permit. All right. So since we've already discussed whether or not HVO has a security interest in the settlement proceeds and how the settlement was not a sale itself, I would just like to point out a final point, which is that Judge Farris did not have a conflict presiding over the case below. HVO has made the argument that Simon Klevansky has been a member of the same firm as Rob Farris, which occurred 15 years ago, and there is no conflict. HVO has not demonstrated how Judge Farris presiding over the case could have impaired any impartiality in any way. And isn't it an appearance of impropriety or an appearance of conflict, and you would make the same argument that there shouldn't be any appearance of impropriety, given the passage of time? Correct. And there's nothing in HVO's briefing that shows how there is even an appearance of impropriety, and thus that is our position. Let me go back to sale versus settlement. Whatever it was, the order did not provide that liens attach to proceeds. Is that not correct? From my recollection, yes. But the cases stand for the proposition that if the secured creditor has a properly perfected security interest pre-petition in the pre-petition property, then that security interest carries over the proceeds of the property itself. But isn't that a UCC concept, however? Is that true in Admiralty? That is a UCC concept, but that can also be applied in Admiralty itself, because H3O has cited these cases, and so I feel it is appropriate to address these cases as well. And I feel that it can. What did H3O need to do to perfect the lien for the filing of the bankruptcy, from the trustee's perspective? What didn't happen that gives the trustee whatever authority the trustee asserted in this case? The H3O did not file a complaint in order to perfect their lien under Admiralty law, and also because automatically they did not provide, also because the permit itself was not a pertinence to the vessel, as of the commencement of the case, they automatically could not have had a maritime lien on the permit. So by virtue of the permit being a pertinence to the vessel as of the commencement of the case, they could have automatically had a maritime lien because they were providing services. However, because the permit was no longer a pertinence and was no longer valuable to the vessel itself, their maritime lien could not have transferred to that permit. So if you have any interest in the permit at all, they are still free to pursue it because the trustee has abandoned any interest you may have had. Anything further? Nothing further, unless you have any further questions for me. No questions. Mr. Lewis, you have almost six minutes. Okay, Your Honors, thank you. So, you know, I think one issue that's kind of overlooked is that allowing the trustee in this case to abandon the fishing permit, see, the fishing vessel might not be seaworthy now, but the amount of income that can be obtained per year would have made that sea vessel very valuable with its permit attached to it. And it's not the whole purpose of the bankruptcy is to protect the debtor and make him be able to be in the proceeding and not be taken advantage of. And allowing VAC Industries to, for the trustee to allow VAC Industries to run it like a coal mining town and say, if you don't pay down the debt, $50,000 within one year, then I get the permit. And then for the trustee to say, okay, if you give $75,000, I'll just give up the permit. So the permit was supposed to be attached to the vessel and the whole purpose of that admiralty intent, that's also completely undermined because the permit was taken away from it and taken away. And the way it was. That happened pre-bankruptcy though, correct? Well, but the fraudulent transfer was during the bankruptcy. And I think that's an important point. That's an important distinction in this case. What was the fraudulent transfer during the course of the bankruptcy? My understanding was the permit was transferred prior to the bankruptcy. Yeah, but when you have the look back, it's still supposed to be within the relevant time frame for the look back because it didn't happen that long in advance of when the debtor initiated his bankruptcy proceeding under that Section 550 that we cited in our opening brief. And if the trustee looked at the look back and said by looking at the time frame of when VAC Industries acquired the permit and divested the debtor out of the permit, that was still within the Section 550 to try to recover that. Well, nobody's questioning that they had a right to recover it as a fraudulent transfer, but you're saying, you're confusing two time frames, the argument which was well before the course of the case and the fact that they could recover it if it was fraudulent from the perspective of unsecured creditors. And that's the analysis that's undertaken during the course of the case. They're not focusing on lien rights. They're focusing on from the perspective of your client and others as an unsecured, actually unsecured or potentially under or unsecured creditor. I'm going to keep those arguments clear because you're confusing me or confusing the record, if nothing else. Well, the H3O Communications was a secured creditor and VAC Industries was not. Wouldn't they have a maritime lien, too? I mean, they may be junior to you in priority, but why would VAC Industries who supply goods to the Deborah Ann not also be a secured creditor with a maritime lien? Well, they're a secured creditor at that time, too, but they have a junior lien. Oh, excuse me. Yeah, I meant, well, they did, but they were junior anyway and the whole purpose was to protect the first creditor in that transfer claim and not keeping that permit with the vessel is depriving the debtor of all that income in the creditors. And what about all the other creditors, secured and unsecured, that will never get anything now that that fraudulent transfer claim was let go? Didn't the trustee settle the claim, counsel? No. Settle the fraudulent transfer action. And that's what we're saying was a sale of the permit because 75,000 of valuable consideration was exchanged from VAC Industries to the trustee and VAC Industries got to get the permit. So my client with the secured superior lien has been undermined. And again, I keep asking, why can't your client arrest the vessel today, bring an action, an NREM action in admiralty, arrest the vessel as it must to recover on its lien, and to the extent the permit is or was an impertinence, exercise rights. If it couldn't do it today because something's happened to the impertinence, why can't you do it today? Why couldn't it do it? Why couldn't your client have sought stay relief to do that during the course of the case? Why couldn't your client have done it the minute the permit exited the case? Why has your client done nothing? In admiralty. In admiralty. Yes, but I think it was the trustee's obligation to protect the debtor and the Deborah Ann and the fishing permit because they're the one that brought the fraudulent transfer claim and assumed that duty. And that prejudiced my client because if, see that's the whole point, if the trustee did not bring the fraudulent transfer claim, then my client would have done something. It's kind of like when someone's a swimmer and they're drowning and someone goes out to rescue them and then leaves them out there in worse shape and they drown, that they can be liable for that negligence. That's what the trustee did in this case because it started to save the fishing permit that's tied to the vessel and then abandon it. So my client was prejudiced by that action of the trustee commencing the fraudulent transfer and then discontinuing it for no good reason, especially for $75,000, which is a pittance of money compared to the value of the permit. All right, your time is up. Thank you very much for your argument. Thank you all, your honors.
judges: Taylor, Lafferty, and Lastreto